IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DONALD L. WISE, JR., ) | |
| ) | |
|        Plaintiff, ) | |
| vs. ) | No. 3:16-CV-1039-M-BH |
| ) | |
| CHRIS WILMOTH, et al., ) | |
| ) | |
|        Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this *pro se* case has been automatically referred for pretrial management. Before the Court for recommendation is *Defendant Hubener's Motion to Dismiss and Brief in Support*, filed May 30, 2016 (doc. 19). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

On April 18, 2016, Donald L. Wise, Jr. (Plaintiff) filed this *pro se* action alleging civil rights violations arising from probate proceedings that resulted in the sale of real property. (*See* doc. 3.) He names as defendants former Dallas County Probate Judge Chris Wilmoth (Probate Judge),[1] D. Scott Curry (Curry), Vonda Mitchell (Mitchell), Oak Grove Memorial Gardens (Oak Grove), Ron Alexander (Alexander), and City of Irving Justice of the Peace Katy Hubener (the JP). (*Id.* at 1-2.)[2] He filed an amended complaint on May 9, 2016. (*See* docs. 11, 15.)

Plaintiff alleges that he was conveyed title to property located at 1228 Perry Street in Irving, Texas (the Property), by Marie Wise through a special warranty deed (the Deed) that he filed in the

---

[1] Plaintiff voluntarily dismissed his claims against the Probate Judge under Rule 41(a) on June 21, 2016. (*See* docs. 35, 36.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

public records of Dallas County on January 9, 2012. (doc. 11 at 7.) Defendant Mitchell, who had been previously granted a durable power of attorney that appointed her as Marie Wise's agent and attorney in fact, contested the Deed as being a forgery and filed a revocation action in the Dallas County probate courts on July 5, 2013. (*Id.* at 7-8.) Mitchell moved for partial summary judgment to cancel the Deed and remove any cloud from the Property caused by the Deed. (*Id.* at 8-9, 12-15.) The probate court granted her motion, which divested Plaintiff of an interest in the Property. (*Id.* at 17-20.)

On March 31, 2015, Mitchell filed a forcible detainer action against Plaintiff in the Justice of the Peace Court, Precinct 4 of Dallas County. (*Id.* at 21-22.) She argued that Plaintiff was a tenant at will or a tenant at sufferance and refused to surrender possession of the Property upon demand. (*Id.* at 23.) The JP presided over a hearing on the forcible detainer action and ordered that Mitchell recover the Property and $3,000.00 in attorney's fees. (*Id.* at 24.) He filed an appeal bond to which Mitchell objected. (*Id.*) A hearing on the objections was held[3] and Plaintiff was granted leave to amend and re-submit his appeal bond. (*Id.*) After Plaintiff submitted an amended appeal bond, the JP sustained the objections and denied the appeal bond "in the hall" without a hearing. (*Id.*) Plaintiff continued to remain on the Property, and several City of Dallas constables were required to forcibly evict him. (*Id.* at 25.) He alleges that the constables subjected him to an "unreasonable search and seizure" of his guns still on the Property during the eviction. (*Id.*)

Plaintiff now seeks declaratory and injunctive relief "from all actions resulting in the deprivations of [his] rights," as well as over thirty million dollars in damages for violations of his Fourth, Seventh, and Fourteenth Amendment rights and for claims of fraud, invasion of privacy,

---

[3] Plaintiff contends that "an alleged attorney sitting in for [the JP]" presided over this hearing. (doc. 11 at 23.)

negligence, intentional infliction of emotional distress, and barratry. (*Id.* at 4, 28.)

On May 30, 2016, the JP moved to dismiss Plaintiff's claims against her pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and alternatively, pursuant to Rule 12(b)(2) for insufficient service of process, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 19.) With a timely-filed response and reply, this motion is ripe for consideration. (docs. 33, 39.)

## II.  RULE 12(b)(1)

The JP first moves to dismiss Plaintiff's claims against her under Rule 12(b)(1) for lack of subject matter jurisdiction, citing the *Rooker-Feldman* doctrine. (doc. 19 at 3.)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Such a motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The dismissal "is not a determination of the merits," however, and "it does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).[4]

### A.   Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized

---

[4]"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, [as here,] the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming,* 281 F.3d at 161 (5th Cir.2001). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

3

by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. When evidence is presented with the motion to dismiss, the attack is "factual." *Williamson*, 645 F.2d at 413. In that case, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, the JP relies solely on the amended complaint to support her motion to dismiss, so she presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412–13.

**B.**     *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine[5] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281-82 (2005). "'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). A "state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are inextricably intertwined with a challenged state court judgment.'" *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citations omitted). However, *Rooker-Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Id.* (quoting *Exxon*, 544 U.S. at 293). Indeed, the doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment."

---

[5] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

*Id.* Nonetheless, a party cannot escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke*, 18 F.3d at 317.

Here, Plaintiff seeks declaratory and injunctive relief against the JP for violations of his Fourth, Seventh, and Fourteenth Amendment rights, as well as "engaging in a conspiracy to commit real estate fraud." (doc. 11 at 5, 25-28.) All of the allegations supporting his claims are based upon occurrences during the justice court proceedings and the JP's judicial decisions, *i.e.* her determination that she had jurisdiction and sufficient evidence to issue an "eviction citation containing a writ of possession and a forcible detainer" and to deny his appeal bond. (*See id.* at 5, 21-25.) Even though Plaintiff attempts to classify his claims against the JP as civil rights violations, the sole cause of his alleged injury is the adverse judgment itself. *See Turner v. Cade*, 354 F. App'x 108, 111 (5th Cir. 2009). Plaintiff's claims against the JP are so "inextricably intertwined" with the justice court's judgment that a ruling in his favor would be overturning that court. *See United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994); *see also Houston v. Venneta Queen*, 606 F. App'x 725, 731 (5th Cir. 2016). He is, in essence, asking for a collateral review and rejection of the JP's disposition on the forcible detainer action. *Shqeir v. Martin*, No. 3:97-CV-1887, 1997 WL 587482 at *2 (N.D. Tex. Sept. 15, 1997) (noting that the Fifth Circuit has long held that a plaintiff may not seek reversal of a state court decision "by casting a complaint in the form of a civil rights action").

Plaintiff contends that the *Rooker-Feldman* doctrine does not apply because the forcible detainer judgment was "procured through fraud." (doc. 33 at 4.) He cites to the Sixth Circuit to argue that a federal court "may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake." *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) (citing *Resolute Ins. Co. v. North Carolina*, 397 F.2d

586, 589 (4th Cir. 1968)). His only contentions of fraud against the JP are his allegations that her judicial rulings were fraudulent because there were allegedly incorrect on the merits. (docs. 11 at 21-25, 33 at 2-3.) He is improperly characterizing his attack on the justice court's judgment as a claim of fraud. *See Price v. Porter*, 351 F. App'x 925, 926-27 (5th Cir. 2009) (holding that plaintiff's federal civil rights complaint, which asserted that a state court judge erred during court proceedings and should have been recused, was actually a "challenge [to] the validity of the outcome in the state court proceedings" and the federal district court did not have subject-matter jurisdiction under the *Rooker-Feldman* doctrine). The *Rooker-Feldman* doctrine therefore divests this Court of subject matter jurisdiction over his claims against the JP. *See Liedtke*, 18 F.3d at 317.

### III. RULE 12(b)(6)[6]

To the extent that subject matter jurisdiction exists, the JP moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted on the basis of judicial immunity. (doc. 19 at 7-8.)

**A.** **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plain-

---

[6] Even though it has been found that subject matter jurisdiction does not exist, the JP's argument on the merits under Rule 12(b)(6) will be considered in the alternative because she discussed the merits in her motion to dismiss.

7

tiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 677 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678-79.

**B.      Judicial Immunity**

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Allegations of bad faith or malice do not

8

overcome judicial immunity. *Id.* at 11. In determining whether a judge acts outside of her judicial capacity, courts should consider whether: (1) the precise act complained of is a normal judicial function; (2) the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) the controversy centered around a case pending before the court; and (4) the acts rose out of a visit to the judge in her official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). If these factors are answered in the affirmative, it favors immunity. *Id.*

Here, Plaintiff claims that the JP does not have judicial immunity because she engaged in non-judicial actions, namely "conspiracy to commit real estate fraud" against him. (doc. 33 at 4-5.) His only allegations to support claims of fraud are based upon her decision to grant the forcible detainer against him and her denial of his appeal bond "in the hallway" of the courthouse instead of during an oral hearing. (docs. 11 at 21-25, 33 at 2-5.) This is insufficient to abrogate her judicial immunity because all of her alleged actions occurred as normal judicial functions in a courtroom–or an "adjunct space" outside the courtroom–that arose out of a visit to her in her official judicial capacity regarding a case pending before her court. *See Malina*, 994 F.2d at 1124.

Plaintiff also argues that the JP does not have judicial immunity because she lacked jurisdiction over the action. (doc. 33 at 2.) He alleges that she was not able to grant the forcible detainer because he was never a tenant at will or tenant at sufferance and that the underlying probate proceedings were in error. (*Id.* at 1-3.) This is also insufficient to abrogate her judicial immunity because his arguments go to the merits and specific facts of his case and not to the justice court's jurisdiction over this general type of action. *See Malina*, 994 F.2d at 1125 (holding that when "a court has some subject-matter jurisdiction, there is sufficient jurisdiction for [judicial] immunity purposes")*; see also Turner v. Raynes*, 611 F.2d 92,95 (5th Cir. 1980) (explaining that even "if a

9

judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune") (citations omitted).  Because justice of the peace courts in Texas have original jurisdiction over cases of forcible entry and detainer, all of the JP's alleged actions occurred within her judicial jurisdiction.  *See* Tex. Gov't Code § 27.031(a)(2).

Accordingly, the JP is absolutely immune from all claims asserted against her, and to the extent that subject matter jurisdiction exists, they should be dismissed for failure to state a claim upon which relief can be granted.  *See Nixon*, 457 U.S. at 745–46.

## IV.  RECOMMENDATION

The JP's motion to dismiss should be **GRANTED**, and Plaintiff's claims against her should be **DISMISSED without prejudice** for lack of subject matter jurisdiction.  To the extent that subject matter jurisdiction exists, Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

**SIGNED this 10th day of November, 2016.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                    _____
                    IRMA CARRILLO RAMIREZ
                    UNITED STATES MAGISTRATE JUDGE