## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DONALD L. WISE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:16-CV-1039-M-BH** |
| | ) | |
| **CHRIS WILMOTH, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this *pro se* case has been automatically referred for pretrial management.  Before the Court for recommendation are the defendants' *Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6)*, filed November 28, 2016 (doc. 45), and *Plaintiff's Motion for Summary Judgement and Opposition to Defendants' Dismissal*, filed June 30, 2017 (doc. 54).  Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED in part** and **DENIED in part**, the plaintiff's remaining claims should be dismissed *sua sponte*, and his motion for summary judgment should be **DENIED AS MOOT**.

### I.  BACKGROUND

On April 18, 2016, Donald L. Wise, Jr. (Plaintiff) filed this *pro se* action against several defendants, which now include Vonda Mitchell (Mitchell), D. Scott Curry (Attorney), Oak Grove Memorial Gardens (Oak Grove), and Ron Alexander (Alexander) (Defendants).[1]  (*See* docs. 3 at 1-2[2]; *see also* docs. 11, 15, 34, 41.)  He alleges claims for violation of his civil rights during probate

---

[1] Plaintiff voluntarily dismissed former Dallas County Probate Judge Chris Wilmoth on June 21, 2016 (docs. 35, 36), and City of Irving Justice of the Peace Katy Hubener's motion to dismiss was granted on December 12, 2016 (docs. 42, 49, 50).

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

proceedings as well as various state law claims, and he seeks declaratory and injunctive relief, $30,000,000 in damages per occurrence for each deprivation of his rights, and $250,000 in costs and reasonable attorneys' fees.  (docs. 11 at 28; 34.)

A.    **Factual Background**

On June 9, 1998, Marie Wise executed a general durable power of attorney appointing her daughter (Mitchell) as her "agent and attorney in fact for [her] and in [her] name to perform any and all acts in [her] stead and to do and perform all such other matters as may be necessary and expedient for the purposes of carrying out the objects above mentioned; and hereby ratify and confirm all that [her] said agent may do in said premises."  (doc. 15 at 4, 14.)[3]

After Marie Wise suffered a stroke, her grandson (Plaintiff) began residing with her in 2001 at 1228 Perry Street in Irving, Texas (the Property).  (*See* doc. 11 at 9, 12; 15-3 at 13.)  She suffered another stroke in 2011.  (doc. 15-3 at 13.)  Plaintiff alleges that Marie Wise conveyed title to the Property to him through a special warranty deed with retained life estate (the Deed) on December 25, 2011.  (docs. 11 at 7; 15 at 6-7; 15-3 at 13-14.)  He recorded the Deed in the public records of Dallas County on January 9, 2012.  (docs. 11 at 7; 34 at 1.)  On April 20, 2012, Marie Wise was placed in an assisted living facility.  (doc. 15 at 49.)

On June 25, 2013, Mitchell entered into a contract on behalf of Marie Wise to sell the Property to Oak Grove, a cemetery adjacent to the Property.  (doc. 11 at 7.)  As a result of the recorded Deed,  the title company rejected the attempted sale. (doc. 34 at 2.)  The vice president for Oak Grove (Alexander), who was involved in the attempted purchase by the cemetery, introduced

---

[3] Plaintiff's amended complaint references various exhibits that were not filed contemporaneously with the amended complaint, but were separately filed approximately three weeks later in an appendix.  (*See* docs. 11, 15.)  The exhibits were also cited by Plaintiff in his supplement to his amended complaint, by Defendants their brief, and by Plaintiff in his response.  (*See, e.g.,* docs. 34 at 1, 2; 46 at 2, 3, 6; 51 at 1, 5, 8.)

Mitchell to Attorney, who then retained Attorney to represent her in the subsequent court proceedings.[4] (*Id.*) Mitchell contested the Deed as being a forgery or the result of "coercion and/or compulsion and/or undue influence," executed a revocation of gift on July 5, 2013, and filed the revocation with Dallas County. (docs 11 at 7-8; 15 at 9-12.)

## B.    Guardianship Proceedings

On July 23, 2013, Mitchell filed a combined application for appointment of guardian of the person and estate and application for sale of real property. (docs. 11 at 8-9; 15 at 14-37; 34 at 8-9, 12-15.) Citation was issued to Marie Wise, but not Plaintiff. (doc. 11 at 9.) On December 16, 2013, Mitchell was appointed Marie Wise's guardian. (*Id.* at 11.)

On February 3, 2014, Mitchell filed an amended application for sale of real property with a request for declaratory judgment. (docs. 11 at 11; 15-1 at 17-22.) She sought a determination, based on reservations in the Deed, that regardless of its validity, she had the right under the Deed to "sell the property in fee simple to any person without the joinder of [Plaintiff] or any other person and to keep absolutely and all proceeds derived from the sale," and to have "the Court order the sale of the property as requested." (doc. 15-1 at 22.) Plaintiff was served with citation on February 25, 2014. (doc. 11 at 11.) He filed an original answer and counterclaim on March 7, 2014, denying Mitchell's claims and seeking sanctions and attorneys' fees. (doc. 15-3 at 16-18.)

## C.    Probate Proceedings

Marie Wise died on April 7, 2014, and her will was probated on April 10, 2014. (doc. 11 at 12-13.) On May 2, 2014, Mitchell filed an ancillary lawsuit against Plaintiff in Dallas County probate court "for the primary purpose of quieting title in [Mitchell in her capacity as independent

---

[4] Plaintiff alleges that Attorney accepted a proposed contingency fee of more than $300,000 from Alexander and Oak Grove to "incite a groundless and fraudulent lawsuit" against him. (doc. 34 at 4.)

executor of the estate of Marie Wise] to [the Property]." (docs. 11 at 14; 15-1 at 48-50; 15-2 at 1-9.)
Citation was issued for Plaintiff. (doc. 15-2 at 23.) On May 12, 2014, Plaintiff recorded an affidavit
of death in the Dallas County records purporting to terminate the equitable life estate interest that
Marie Wise reserved for herself in the Deed. (doc. 11 at 14.) He answered the ancillary suit on June
5, 2014, and Attorney moved to transfer the ancillary suit to another probate court. (*Id.*) The motion
was granted on June 19, 2014. (*Id.* at 15.)

On July 22, 2014, Mitchell moved for summary judgment on whether she had the authority
to revoke an estate deed and change a beneficiary designation. (docs. 11 at 15; 15-2 at 46.) Her
motion was granted on September 9, 2014. (doc. 11 at 15.) The court severed out tort claims in the
case on October 6, 2014, and Attorney filed a new ancillary action on October 15, 2014. (*Id*. at 17.)
Plaintiff filed a motion to reconsider on November 6, 2014, and the probate court set aside the
summary judgment and the severance on November 17, 2014. (*Id.* at 18.) Plaintiff claims that
Attorney subsequently had an *ex parte* conversation with the probate judge and court coordinator
"regarding the Court's ruling." (*Id.* at 18.) He appears to allege that the judge changed his decision
and ultimately granted the motion for summary judgment on December 31, 2014. (docs. 11 at 18-
20; 15-4 at 15-17; 45 at 5-7.)

Plaintiff appealed the summary judgment to the Court of Appeals for the Fifth District of
Texas at Dallas.[5] (*See* doc. 15-4 at 12-40.) The court of appeals affirmed, concluding "the trial

_____

[5] Plaintiff raised the following eight issues on appeal: (1) Whether or not a General Durable Power of Attorney,
with no specific powers designated can delegate powers to the agent to set aside a deed; (2) Whether or not the Uniform
Power of Attorney Act applies to override the general laws with regard to the Durable Powers of attorney; (3) Whether
or not the ex parte conversations of an attorney with the Court in chambers with regard to issues of the case, requires
reversal or remand for new trial; (4) Whether or not the Trial Court's consideration of evidence, that is not in the record,
or has not been filed or produced to opposing counsel twenty one (21) days before a hearing, in a Motion for Summary
Judgment hearing, requires reversal; (5) Whether or not the Court erred in striking the majority of Defendant's Affidavit
in response to Summary Judgment; (6) Whether or not the Court erred in finding the Power of Attorney was valid since
it's date of execution is unclear; (7) Whether or not the Court erred in finding the Power of Attorney need not be filed

4

court did not err by granting summary judgment cancelling the Deed, quieting title to the property in Marie Wise's Estate, and removing any cloud from the property caused by the Deed." *Wise v. Mitchell*, No. 05-15-00610-CV, 2016 WL 3398447, at *8 (Tex. App.—Dallas Jan. 20, 2016, pet. denied). Plaintiff filed a petition for discretionary review in the Texas Supreme Court, which was denied on December 9, 2016. *See id.*; *see also Wise v. Mitchell*, No. 16-0697, slip op. (Tex. Dec. 9, 2016) (denying petition for review).

C.    **Eviction Proceedings**

On March 31, 2015, Mitchell filed a forcible detainer action against Plaintiff in the Justice of the Peace Court, Precinct 4, of Dallas County. (docs. 11 at 21-22; 15-5 at 5-9.) She argued that he was a tenant at will or a tenant at sufferance who refused to surrender possession of the Property upon demand. (doc. 11 at 23.) After a hearing, the justice of the peace ordered that Mitchell recover the Property and $3,000 in attorneys' fees. (docs. 11 at 24; 15-5 at 24.)

Plaintiff continued to remain on the Property, and a justice of the peace refused to sign an appeal bond or to stop the execution of the forcible detainer. (doc. 11 at 24.) On June 25, 2015, 10-15 constables allegedly blocked off the street, surrounded the Property with assault rifles drawn, and forcibly evicted Plaintiff, ostensibly because of a statement made by Attorney that he would "resort[] to violence and com[e] out with guns blazing." (*Id.* at 24-25.) The constables allegedly subjected him to an "unreasonable search and seizure" of his property during the eviction. (*Id.*)

D.    **Federal Proceedings**

Plaintiff filed his federal lawsuit on April 18, 2016. (doc. 3.) He amended his complaint on

---

with the County in a real estate transaction; (8) Whether or not the Court erred in holding the deed was testamentary in character and could be set aside by power of attorney. (doc. 15-4 at 18-19.) Each point of error was resolved against him. *See Wise*, 2016 WL 3398447, at *5-10.

May 9, 2016 and filed an appendix on May 26, 2016, which contained exhibits identified in the amended complaint. (docs. 11, 15.)  In response to a motion for a more definite statement, Plaintiff filed what was liberally construed as a supplement to his amended complaint.  (docs. 34, 41.)

On November 28, 2016, Defendants moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted and attorney immunity.  (doc. 45.)  With a timely-filed response and reply, this motion is ripe for recommendation.  (docs. 52, 53.)[6]

## II.  RULE 12(b)(1)

Defendants first move to dismiss Plaintiff's claims against them under Rule 12(b)(1) for lack of subject-matter jurisdiction.  (doc. 45 at 1.)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

### A.    Legal Standard

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S.

---

[6] On June 30, 2017, Plaintiff filed *Plaintiff's Motion for Summary Judgement [sic] and Opposition to Defendants' Dismissal*. (doc. 54.)  To the extent that it relates to Defendants' motion to dismiss, it was filed without leave of court. *See* L.R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence.").   The local rules of this Court "do not allow sur-replies as a matter of course."  *Tobias v. Price*, No. 3:06-CV-1361-M, 2009 WL 3681981, at *4 n.6 (N.D. Tex. Nov. 4, 2009).  Since Plaintiff has not sought leave to file a sur-reply, "it will not be considered."  *Neely v. Khurana*, No. 3:07-CV-1344-D, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, the sur-reply would not change the findings or recommendation.

500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and

"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendants rely, in part, on trial court orders and a court of appeals opinion from the state court proceedings.[7] (*See* docs. 11 at 27; 34 at 1-6; 45 at 5-18.) Their motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. "Because Plaintiff does not contest Defendant[s'] proffered evidence, however, there are no disputed facts to resolve."[8] *McClain v. Bueschel*, No. 3:09-CV-1721-M-BH, 2010 WL 742452, at *2 (N.D. Tex. Mar. 2, 2010).

**B.    *Rooker-Feldman* Doctrine**

Defendants argue that all of Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. (docs. 45 at 1-2; 46 at 5-6.)

The *Rooker-Feldman* doctrine[9] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

---

[7] Some, but not all, of the documents were provided in the appendix to the amended complaint. (See doc. 15.)

[8] Although Plaintiff disputes the merit of the state courts' decisions, he does not dispute that the courts made them. (*See* docs. 11, 34, 51.)

[9] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

8

before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281 (2005). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

A "state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are inextricably intertwined with a challenged state court judgment.'" *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). *Rooker-Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached[,]'" however. *Id.* (quoting *Exxon Mobil Corp*, 544 U.S. at 293); *accord Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam). The doctrine "generally applies only where a plaintiff seeks relief that *directly* attacks the validity of an existing state court judgment." *Weaver*, 660 F.3d at 904 (emphasis added). Nonetheless, a party cannot escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke*, 18 F.3d at 317 (citing cases).

Defendants argue that "[a]ll of Plaintiff's claims are inextricably intertwined with his challenges to the probate-court and justice-court judgments" because "[a]ll of Plaintiff's claims are

9

founded, in one way or another, on his premise that he was the owner of the [Property,] . . . . [and that] if he never owned the [Property], then all of his claims necessarily fail." (doc. 46 at 6-8.) Plaintiff responds that *Rooker-Feldman* does not apply "[b]ecause the State Court did not decide the same issues or claims brought forth in [his] lawsuit, a ruling favorable on [the] federal claims Would Not require the Federal Court to overrule a State Court judgement [sic]." (doc. 51 at 6)

### 1.    *Constitutional Claims*

Plaintiff sues under § 1983 for violations of his constitutional rights. (doc. 11 at 5-6.) He claims his Fourth Amendment right "to be secure in persons, houses, papers, and effects" was violated through "unreasonable searches and seizures." (*Id.* at 4.) He also claims that his Seventh Amendment right "to a fair trial and jury trial" and his Fourteenth Amendment rights were violated because he was deprived "of property without due process and equal protections of the laws." (*Id.*)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Although raised in terms of violations constitutional rights, Plaintiff is essentially asking for collateral review and rejection of the state courts' allegedly "improper ruling" on ownership of the Property and right to possession. (*See* doc. 11 at 5-7); *see also Shqeir v. Martin*, No. 3:97-CV-1887, 1997 WL 587482, at *2 & n.8 (N.D. Tex. Sept. 15, 1997) (noting that the Fifth Circuit has long held

10

that a plaintiff may not seek reversal of a state court decision "by casting a complaint in the form of a civil rights action"). These issues were expressly decided by the state trial courts and affirmed on appeal.[10] Plaintiff's constitutional claims against Defendants are so "inextricably intertwined" with the state courts' rulings that a ruling in his favor on the constitutional claims would be overturning the decisions of the state courts. *See United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994); *see also Shqeir*, 1997 WL 587482, at *4 ("Stripped to its core, Plaintiff's claim is a collateral attack on a final state court decision."). The *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction over Plaintiff's constitutional claims against Defendants. *See Liedtke*, 18 F.3d at 317.[11]

### 2.    *State Law Claims*

Plaintiff also brings a series of state law claims against various defendants, including claims for fraud, conspiracy, breach of fiduciary duty, civil and criminal barratry, intentional infliction of emotional distress, abuse of process, "Unethical Action and Derelict of Public Servant Duties," negligence, invasion of privacy, and grand larceny. (doc. 11 at 4-6, 26.) As noted, the *Rooker-Feldman* doctrine does not preclude federal jurisdiction over an "independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil Corp.*, 544 U.S. at 293. It "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Weaver*, 660 F.3d at 904.

Although related to the state court proceedings, Plaintiff's state law claims are independent

---

[10] *See Wise*, 2016 WL 3398447, at *8-9 (noting "[w]e conclude the Power of Attorney was not vague and authorized Mitchell to perform 'any and all acts' on behalf of the decedent, including revoking the Deed" and that "the Deed was subject to revocation by Mitchell acting as the decedent's agent under the Power of Attorney").

[11] Because the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction over Plaintiff's constitutional claims, Defendants' § 1983 standing argument need not be considered separately.

of the underlying dispute and relate to the conduct of the defendants before and during the state court proceedings. They are independent claims that were not addressed by the state courts or that do not directly attack the validity of the existing state court judgment. Because Plaintiff has alleged various independent state law claims that were not considered by the state courts, the *Rooker-Feldman* doctrine does not divest this Court of subject-matter jurisdiction over them.[12]

Defendants' motion to dismiss under Rule 12(b)(1) should be granted as to Plaintiff's constitutional claims and denied as to his state law claims.

### III.  RULE 12(b)(6)

To the extent that subject-matter jurisdiction exists, Defendants alternatively move under Rule 12(b)(6) to dismiss Plaintiff's § 1983 claims against Defendants and his state law claims against Attorney. (doc. 45 at 3.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343

---

[12] Plaintiff also responds that the *Rooker-Feldman* doctrine does not apply to malpractice suits. (doc. 51 at 6) (citing *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1351 (7th Cir. 1996)). He does not bring a malpractice suit, however.

F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Defendants do not rely on any evidence outside of the pleadings in making their motion to dismiss under Rule 12(b)(6). (*See* docs. 45, 46.) Conversion of their motion to dismiss into a motion for summary judgment is therefore unnecessary. *See Collins*, 224 F.3d at 499; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of

'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

## A.    **Constitutional Claims**

Defendants argue that to the extent that jurisdiction is not lacking over Plaintiff's § 1983 claims, they should be dismissed for failure to state a claim because he has not sufficiently alleged state action. (doc. 46 at 10-12.) They contend that the remaining defendants are all private citizens, and that for a private citizen to be held liable under § 1983, the plaintiff must allege that "each private citizen conspired—or acted in concert—with a state actor." (*Id.* at 11.)

### 1.    *State actor*

According to Plaintiff, Attorney is a state actor because he is an attorney at law and an officer of the court. (doc. 51 at 7.) "The law is clear that a private attorney who merely represents a client in a civil proceeding . . . does not act under the color of state law," however. *Dolenz v. Akin*, No. 3:95-CV-1605-P, 1997 WL 21388, at *3 (N.D. Tex. Jan. 14, 1997) (citations omitted), *aff'd*, 129 F.3d 612 (5th Cir. 1997) (per curiam). Plaintiff also argues that Mitchell is a state actor because she was an "Attorney in Fact under a Durable Power of Attorney." (doc. 51 at 7.) Even accepting his argument," Mitchell would not be a state actor for the same reason as Attorney. *See Dolenz*, 1997 WL 21388, at *3.

Plaintiff's allegations regarding Mitchell's involvement with the court occurred primarily

in her capacity as a guardian and then executor of Marie Wise's estate. To the extent that he relies on Mitchell's status as either a guardian for Marie Wise or executor of her estate, courts have rejected the position that guardians or executors were state actors because of their position or because a court appointed them. *See Cokley v. Barriga*, No. SA-14-CV-945-XR, 2014 WL 5469834, at * (W.D. Tex. Oct. 28, 2014) (noting that "guardians and attorneys *ad litem* are not state actors merely by their positions or because a court appoints them"); *Dickson v. Hicks*, No. 3:10-CV-1789, 2010 WL 4627803, at *1 (N.D. Tex. Oct. 12, 2010) (noting "[e]xecutors and administrators do not act 'under color of state law' by virtue of their role in state probate proceedings"), *adopted by* 2010 WL 4627742 (N.D. Tex. Nov. 4, 2010). Plaintiff has not sufficiently alleged state action.[13]

### 2.    *Conspiracy with a state actor*

In *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004), the Fifth Circuit explained that "[f]or a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Id.* at 420 (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989) (per curiam)). The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Priester*, 354 F.3d at 420; *see also Avdeef*, 616 F. App'x at 676. Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Id.* (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)).

---

[13]A private party can be held to be a state actor under only three circumstances, (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1981); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974). Plaintiff has alleged no facts to support any of these circumstances.

15

Here, Plaintiff alleges that Defendants conspired with each other, not a state actor. (*See* doc. 11 at 4-6, 26, 34.) He alleges that Oak Grove worked to "depriv[e] [him] of property without due process and equal protection of the laws by engaging in a *conspiracy* to commit real estate fraud and having an intertwined relationship *with [Alexander], [Attorney] and [Mitchell]*." (doc. 11 at 6) (emphasis added). He also claims that "[Attorney] colluded with Justice Hubener . . . to procure a judgement [sic] to seize and take possession of plaintiff's property." (doc. 34 at 5.) This allegation, however, is conclusory and devoid of any specific facts to support an allegation that an agreement existed between them to commit an illegal act, and that a deprivation of constitutional rights occurred. Plaintiff has failed to sufficiently allege that Defendants conspired with a state actor.

To the extent that they are not barred under the *Rooker-Feldman* doctrine, Plaintiff's § 1983 claims should be dismissed for failure to state a claim.

## B.    State Law Claims Against Attorney

Defendants next argue that all of Plaintiff's state law claims against Attorney should be dismissed as are barred by qualified immunity.[14] (doc. 46 at 18.)

"Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client." *Ainsworth v. Wells Fargo Home Mortg., Inc.*, No. 3:14-CV-1942-M, 2014 WL 7273945, at *8 (N.D. Tex. Dec. 22, 2014) (quoting *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-699-CV, 2008 WL 2938823, at *2 (Tex. App.—Austin July 29, 2008, no pet.)); *accord Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. 2014) (per curiam). "This immunity

---

[14] Defendants argue that "all claims" against Attorney should be dismissed because of qualified immunity. (*See* doc. 46 at 16-18.) They rely solely on Texas law, however, and provide no legal basis for why it would bar Plaintiff's federal claims against Attorney. (*See* docs. 45, 46, 52.) This argument is considered only in the context of the state law claims against Attorney.

protects even allegedly fraudulently statements made to non-clients in connection with a legal representation." *Johnson v. Ashmore*, ___ F. App'x ___, 2017 WL 958313, at *1 (5th Cir. 2017) (per curiam) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483-86 (Tex. 2015)).  The application of this qualified immunity to attorneys is based on the fact that the public has an interest in "loyal, faithful and aggressive representation by the legal profession." *Ainsworth*, 2014 WL 7273945, at *8  (quoting *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex. App.—El Paso 1988, writ denied)); *see Reagan Nat'l*, 2008 WL 2938823, at *2.

In fulfilling the duty to "zealously represent his clients within the bounds of the law," the qualified immunity doctrine ensures that an attorney "has the right to interpose any defense or supposed defense and make use of any right [on] behalf of such client or clients as [he] deemed proper and necessary, without making himself subject to liability in damages." *Reagan Nat'l*, 2008 WL 2938823, at *2;  *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The doctrine is focused "on the kind of conduct engaged in, not on whether the conduct was meritorious in the context of the underlying lawsuit." *Bradt*, 892 S.W.2d at 72.  "[T]he dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex.1996).  "Stated differently, an attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney." *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998) (citation and internal quotation marks omitted). Accordingly, "[e]ven meritless conduct is not actionable when it comes 'in the discharge of [an attorney's] duties in representing a party in a lawsuit.'" *Taco Bell Corp.*, 939 F. Supp. at 532 (citation omitted).

A lawyer's protection from liability arising out of his representation of a client is not without limits, however. *Reagan Nat'l*, 2008 WL 2938823, at *3. "Texas courts have recognized an exception to the privilege when an attorney knowingly commits a fraudulent act outside the scope of his legal representation of the client." *Id.*; *accord Miller*, 993 F. Supp. at 654-65 (citing cases). This type of action is foreign to his duties as an attorney, and an attorney cannot shield himself from liability simply because he is an agent of his client. *Reagan Nat'l*, 2008 WL 2938823, at *3.

Here, Plaintiff sued Attorney based on his representation of Mitchell as well as the estate of Marie Wise. (*See* doc. 34 at 4-6.) He appears to argue that Attorney engaged in a conspiracy and fraud with the other defendants so that he is not protected by qualified immunity.[15] (*See* doc. 51 at 9.) Although couched in terms of fraud and a conspiracy, however, the conduct that Plaintiff cites relates to representation, preparing documents, and appearing in court. (*See* docs. 11 at 5-6; 34 at 1-6.) These are activities that involve the professional training and skill of an attorney—activities to which qualified immunity traditionally apply. Plaintiff's state law claims against Attorney are barred by the doctrine of qualified immunity.[16]

Defendants' motion to dismiss under Rule 12(b)(6) should be **GRANTED**.

---

[15] In his response, Plaintiff argues:

> [Attorney] CANNOT conclusively establish that his alleged conduct, his violations of clearly established law, his intentional Acts of deprivation of Plaintiff's constitutionally protected right to be heard and to present his case, his intentional and illegal Acts of engaging in a conspiracy to commit fraud and land fraud, his intentional violation of Plaintiff's privacy rights, his intentional violation of Plaintiff's Fourth Amendment right to be secure from unlawful searches and seizures of property and his intentional violation of Plaintiff's Fourteenth Amendment rights of due process and equal protection of the laws, was within the scope of his legal representation to his client. Therefore, [Attorney] is not protected by Qualified Immunity.

(doc. 51 at 9.)

[16] To the extent that attorney qualified immunity would not bar Plaintiff's claims against Attorney, Plaintiff's claims against him will be considered with the other defendants in the *sua sponte* dismissal for failure to state a claim.

## IV.  REMAINING CLAIMS

Although Defendants' motion does not specifically address Plaintiff's remaining state law claims, the Court should exercise supplemental jurisdiction and dismiss them *sua sponte*.[17]

Under § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims.  *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[18] Nonetheless, this rule is "neither mandatory nor absolute." *Smith*

---

[17]A court may *sua sponte* dismiss a plaintiff's claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  "The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond."  *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N (BH), 2012 WL 6764571, at *7 (N.D. Tex. Dec. 10, 2012) (citing *Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n.1 (E.D. Tex. Sept. 26, 2008), *adopted by* 2013 WL 55669 (N.D. Tex. Jan. 4, 2013).

[18] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

19

*v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). District courts are given wide

discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v.*

*Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799

(5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine

of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental

jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the

litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims.

They arise from the same "common nucleus of operative facts" as his federal claims and can be

disposed of promptly. The Court should therefore exercise supplemental jurisdiction over them.

## A.    <u>Fraud Claims</u>

Plaintiff alleges various fraud claims against Defendants. (doc. 11 at 4-6, 26.)

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff;

(2) the representation was material; (3) the representation was false; (4) when the defendant made

the representation[,] the defendant knew it was false or made the representation recklessly and

without knowledge of its truth; (5) the defendant made the representation with the intent that the

plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the

plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd., v. Potter*, 607 F.3d 1029,

1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51

---

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

S.W.3d 573, 577 (Tex. 2001)).[19]  Constructive fraud involves "the breach of some legal or equitable duty . . . that the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests."  *Schroeder v. Wildenthal*, No. 3:11-CV-0525-B, 2011 WL 6029727, at *4 (N.D. Tex. Nov. 30, 2011) (quoting *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1965)).  Unlike actual fraud, constructive fraud does not require any intent to deceive.  *Id.*  Both claims are subject to Rule 9(b).  *Potter*, 607 F.3d at 1032; *Schroeder*, 2011 WL 6029727, at *4.

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.[20]  *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.

---

[19] The elements of a statutory real estate fraud claim and fraud by misrepresentation are similar to common law fraud.  *See* Tex. Bus. & Com. Code Ann. § 27.01(a)(1); *Smith v. BCR Inc.*, No. Civ. A.SA-04-CA-0303-XR, 2005 WL 3454104, at *4 (W.D. Tex. Nov. 29, 2005).  Additionally, "[c]ourts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose."  *United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005) (citing cases).  Plaintiff also alleges intrinsic and extrinsic fraud, however, courts consider these types of fraud have generally applied these differentiations in the context of attacking a final judgment, such as in making a bill of review, rather than as independent causes of action.  *See, e.g., Marriage of Mobley*, 503 S.W.3d 636, 642-43 (Tex. App.—Texarkana 2016, pet. denied); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003) (noting "[f]raud in relation to attacks on final judgments is either extrinsic or intrinsic" but that "[o]nly extrinsic fraud will support a bill of review").  Accordingly, the these fraud-based claims will be considered together.

[20] Federal Rule of Civil Procedure 9(b) states:

**(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

Here, Plaintiff generally alleges fraud against Defendants but fails to allege any facts in support of his claim. (*See* doc. 11 at 4; *see also* doc. 34.) Although he criticizes some of them and their actions, he does not allege that any of them made any material, false representation to him upon which he relied to his detriment. (*See* docs. 11, 34.) His general, conclusory allegations fall well short of the "the who, what, when, where, and how" heightened pleading requirement required under Rule 9(b). *See Williams*, 112 F.3d at 177; *see also* Fed. R. Civ. P. 9(b). Because he fails to allege the elements of fraud with sufficient particularity under Rule 9(b), his fraud claims should be dismissed for failure to state a claim.

## B.   <u>Conspiracy</u>

Plaintiff also alleges civil conspiracy claims against Defendants.[21] (doc. 11 at 4, 26.)

Under Texas law, civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citations omitted).

Here, Plaintiff generally alleges that a conspiracy of some form existed between Defendants to deprive him of the Property. (*See* doc. 11 at 4, 26.) He does not allege a meeting of the minds,

---

[21] Plaintiff also alleges a collusion claim against the defendants. (doc. 11 at 4.) Collusion is not a separate cause of action in Texas, however. *Brown v. Texas State Univ. Sys. Bd. of Regents*, No. A-13-CA-483-SS, 2013 WL 6532025, at *16 (W.D. Tex. Dec. 12, 2013). In *Brown*, after noting that collusion was not a separate cause of action, the district court liberally construed the plaintiff's collusion claim as one for civil conspiracy. *Id.* Plaintiff's collusion claim will therefore be included with his other civil conspiracy claims.

unlawful acts, or damages, however.  Although Plaintiff disagrees with the state courts' conclusions, his disagreement is not sufficient to allege a conspiracy.  (*See* docs. 11, 34); *see also Massey*, 652 S.W.2d at 934 (noting elements of civil conspiracy).  His allegations against the defendants amount to mere "labels and conclusions," which are insufficient to state a claim upon which relief may be granted.  *Twombly*, 550 U.S. at 555.  He has therefore failed to nudge his claim across the line from conceivable to plausible, and his conspiracy claim should be dismissed.

## C.    __Breach of Fiduciary Duty__

Plaintiff alleges that Attorney and Mitchell breached their fiduciary duties "to inform . . . Marie Wise of the punitive revocation of plaintiff's estate deed as well as the applications For Sale Of Real Property that was filed."  (docs.11 at 4; 34 at 4.)

Under Texas law, the essential elements of a breach of fiduciary duty claim are "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Hunn v. Dan Wilson Homes, Inc*., 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.)).

Here, Plaintiff has not alleged that a fiduciary duty existed between him and either Attorney or Mitchell.  (*See* docs. 11, 34.)  He instead focuses on their fiduciary relationship with Marie Wise. (*See* docs. 11, 34.)  Plaintiff has failed to allege any elements of a breach of fiduciary duty to him, and his claim should therefore be dismissed *sua sponte* for failure to state a claim.

## D.    __Barratry__

Plaintiff alleges that Attorney committed barratry "by accepting a proposed contingency fee

23

of more than $300,000" from Alexander and Oak Grove.[22]  (docs. 11 at 4-6; 34 at 4.)

"The ordinary meaning of barratry is vexatious incitement to litigation, especially by soliciting potential legal clients."  *Neese v. Lyon*, 479 S.W.3d 368, 385 (Tex. App.—Dallas 2015, no pet.) (citing *Barratry*, BLACK'S LAW DICTIONARY (10th ed. 2014)).  Section 82.0651 of the Texas Government Code provides a private right of action for barratry in two situations:

> (a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, and to recover any amount that may be awarded under Subsection (b).
>
> . . .
>
> (c) A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

Tex. Gov't Code Ann. § 82.0651(a), (c).

Here, Plaintiff makes only vague and conclusory allegations regarding barratry based on Attorney's representation of Mitchell and the estate of Marie Wise.  He does not allege that he had a contract for legal services with Attorney or that Attorney solicited his business by any means, much less by means that violated state law or the rules of professional conduct governing barratry. *See* Tex. Gov't Code Ann. § 82.0651; *see also* Tex. Penal Code Ann. § 38.12; Tex. Disciplinary Rules Prof'l Conduct R. 7.03.  Accordingly, he has not alleged a necessary element of a civil barratry claim, and his barratry claim should be dismissed *sua sponte* for failure to state a claim. *See Smith v. Texas*, No. H-12-469, 2012 WL 5868657, at *10-11 (S.D. Tex. Oct. 26, 2012)

---

[22] Plaintiff cites to the Texas Penal Code regarding his barratry allegation against Attorney. (doc. 34 at 4.)  To the extent that he is alleging a barratry claim under the Texas Penal Code, it will be addressed with his other criminal claims.

24

(dismissing a civil barratry claim for failure to state a claim).

E.    **Intentional Infliction of Emotional Distress**

Plaintiff alleges claims for intentional infliction of emotional distress against Defendants. (doc. 11 at 4, 26.)

Under Texas law, the elements to a infliction of emotional distress claim are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Geske v. Bank of America Home Loans*, No. 3:11-CV-2220-M, 2011 WL 6968317, at *4 (N.D. Tex. Dec. 12, 2011) (citing *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)), *adopted by* 2012 WL 75752 (N.D. Tex. Jan. 9, 2012).

"Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Id.* (quoting *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001)). "The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it "extreme and outrageous." *Bradford*, 48 S.W.3d at 758. Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

Here, Plaintiff fails to allege that the defendants' conduct was "extreme and outrageous." He appears to rely on the revocation of the Deed that deprived him of the Property, which he alleges was gifted to him by Marie Wise. (*See* docs. 11, 34.) Because these allegations are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," *Bradford*, 48 S.W.3d

25

at 758 (citation omitted), Plaintiff's claim for intentional infliction of emotional distress should be dismissed *sua sponte* for failure to state a claim.

**F.    Abuse of Process**

Plaintiff also generally alleges an abuse of process claim against Defendants. (doc. 11 at 4.)

A claim for abuse of process requires: (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Duffie v. Wichita Cty.*, No. 7:13-CV-0032-O, 2014 WL 5796837, at *4 (N.D. Tex. Nov. 6, 2014) (citing *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no. pet.). "It is the use of process to compel a party to do a collateral thing which he could not be compelled to do which constitutes the tort." *Gonzales v. United States*, No. EP-14-CV-263-PRM-RFC, 2015 WL 13344910, at *7 (W.D. Tex. Aug. 12, 2015) (citing *Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex. App.—El Paso 1984, reh'g den'd)), *adopted by* 2015 WL 13345624 (W.D. Tex. Sept. 14, 2015), *aff'd*, ___ F. App'x ___, 2017 WL 922149 (5th Cir. 2017) (per curiam). "The 'process' referred to is civil or criminal process issued by a court, such as a writ, a warrant, or other order of the court mandating or prohibiting certain action within a legal proceeding." *Id.* (citing *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Snyder v. Byrne*, 770 S.W.2d 65, 69 (Tex. App.—Corpus Christi, 1989, reh'g denied)). "The 'critical aspect' of an abuse of process claim is the improper use of the process *after it has been issued*." *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied) (emphasis in original) (quoting *Preston Gate*, 248 S.W.3d at 897); *see also Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App.—Houston 1965, no writ) ("Some definite act or threat not authorized by the process, or aimed at an objective not

26

legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.").

Here, Plaintiff has failed to allege even the first element of an abuse of process claim, i.e., an illegal or improper use of process. Even assuming that Mitchell had an ulterior motive in revoking the Deed and filing suit against him (while working with the other defendants), as he appears to allege, an ulterior motive does not supplant the first element. For example, in *Blanton*, the court affirmed the dismissal of an abuse of process claim where a plaintiff alleged that the defendant filed an amended pleading seeking punitive damages to extort settlement, then dropped the punitive damage claim just before trial began, noting "[e]ven if we assume that the amended pleading was maliciously filed, [the plaintiff's] suit is fatally defective because it fails to allege an improper use of the process." 681 S.W.2d at 378.

Plaintiff has not alleged a necessary element of an abuse of process claim, and the claim should therefore be dismissed *sua sponte* for failure to state a claim.

## G.    Unethical Action and Derelict of Public Servant Duties

Plaintiff generally alleges "Unethical Action and derelict of Public Servant Duties" against Defendants. (doc. 11 at 4.) To the extent that this is a separate claim, he does not state a legal basis for it. As noted, regardless of whether a plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal, *Guidry*, 954 F.2d at 281, and a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Accordingly, his "Unethical Action and derelict of Public Servant Duties" claim should be dismissed *sua sponte* for failure to state a claim.

27

## H.    Negligence

Plaintiff generally alleges a negligence claim against Defendants.  (doc. 11 at 4.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).  A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties—to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991).

Plaintiff alleges that Mitchell did not inform Marie Wise that she revoked the Deed under her power of attorney.  (*See* doc. 11 at 8.)  He does not allege facts related to Defendants' duty to *him* that was breached, however.  Plaintiff fails to allege specific facts to state a plausible negligence claim.  *See, e.g., Algoe v. Texas*, Nos. 3:15-CV-1162-D, 3:15-CV-1204-D, 2016 WL 6902154, at * (N.D. Tex. Sept. 29, 2016) (dismissing a negligence claim for failure to allege sufficient facts to plead a plausible claim for negligence), *adopted by* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016); *Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031-M-BH, 2017 WL 457084, at *17 (N.D. Tex. Jan. 6, 2017) (same), *adopted by* 2017 WL 447216 (N.D. Tex. Feb. 2, 2017).  His negligence claim should be dismissed *sua sponte* for failure to state a claim.

## I.    Invasion of Privacy

Plaintiff generally alleges an invasion of privacy claim against Defendants.  (doc. 11 at 4.)

Texas law recognizes multiple forms of invasion of privacy, each with separate elements. *Crain v. Hearst Corp.*, 878 S.W.2d 577, 579-80 (Tex. 1994). There are "three distinct injuries under

the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness." *James v. Dallas Police Dep't*, No. 3:12-CV-457-N-BN, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013) (citing *Cain*, 878 S.W.2d at 578), *adopted by* 2013 WL 607153 (N.D. Tex. Feb. 19, 2013).

Because Plaintiff's claims relate to his alleged ownership and deprivation of the Property, it appears that he is alleging "intrusion upon seclusion." (*See* doc. 11 at 6) (noting that Plaintiff's privacy rights were invaded when the Property was searched following the forcible detainer action). The elements of an intrusion upon seclusion claim are: "(1) an intentional intrusion upon a person's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person, and (3) as a result of which the person suffered an injury." *Baugh v. Fleming*, No. 03-08-00321-CV, 2009 WL 5149928, at *1 (Tex. App.—Austin 2009, no pet.). There cannot be an "intrusion" where there is no legitimate expectation of privacy, however. *Smith v. Methodist Hospitals of Dallas*, No. 3:07-CV-1230-P, 2008 WL 5336342, at *6 (N.D. Tex. Dec. 19, 2008) (citing *Vaughn v. Drenno*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, no pet.)). "Usually an action for intrusion upon one's seclusion is found only when there has been a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Graham v. JPMorgan Case Bank, Nat. Ass'n*, No. 4:13-CV-1410, 2015 WL 4431199, at *12 (S.D. Tex. July 15, 2015) (internal quotation marks omitted) (quoting *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989)). "To be actionable, the intrusion must be highly offensive meaning that it must be unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

Here, Plaintiff was being evicted by court order after another court determined that he did

29

not own the Property. He therefore did not have a legitimate expectation of privacy on the Property. *See Warren v. Bank of America, N.A.,* No. 3:16-CV-1373-M-BN, 2017 WL 728260 (N.D. Tex. Feb. 23, 2017) (finding that tenant at sufferance who had no legal interest in the property and could not establish a lawful right to possess the property could not state a claim for invasion of privacy) (citing *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355 (5th Cir. 2016))*.* Plaintiff's invasion of privacy claim against Defendants should be dismissed *sua sponte* for failure to state a claim.

**J.    Criminal Statutes**

Plaintiff's amended complaint and supplement also appear to allege criminal barratry and grand larceny claims against some of the defendants. (*See* docs. 11 at 4, 25-26; 34 at 4-5.) To the extent that these references can be liberally construed as an attempt to bring civil claims under criminal statutes, "[p]rivate citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)). They cannot enforce criminal statutes in a civil action. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007); *see also Algoe v. Texas*, Nos. 3:15-CV-1162-D, 3:15-CV-1204-D, 2016 WL 6902154, at *9 (N.D. Tex. Sept. 29, 2016) (dismissing civil claim brought pursuant to criminal statutes), *adopted by* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016). Any claims based on criminal statutes should be dismissed *sua sponte* for failure to state a claim.

## V. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended his complaint once, submitted a 356-page appendix to the amendment, and filed a more definite statement that has been liberally construed as a supplement to his amended complaint. (*See* docs. 11, 15, 34, 41.) He has alleged his best case, and no further opportunity to amend his claims appears warranted.

## VI.  RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED in part** and **DENIED in part**. Plaintiff's constitutional claims should be **DISMISSED without prejudice** for lack of subject-matter jurisdiction, but to the extent that subject-matter jurisdiction exists, the claims should be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted. All of Plaintiff's state law claims against Attorney should be **DISMISSED with prejudice** based on qualified immunity, and his remaining state law claims should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim. Plaintiff's motion for summary judgment should be **DENIED AS MOOT**.

31

**SO RECOMMENDED** on this 3rd day of July, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE